## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WENDY BARROWS,             :     Civil Action No. 05-3880(NLH)

                          :

         Plaintiff,      :

                          :

      v.               :     **OPINION**

                          :

CHASE MANHATTAN MORTGAGE  :

CORPORATION, et al.,     :

                          :

         Defendants.     :

**APPEARANCES:**

Donald M. Doherty, Esquire
Sander D. Friedman, Esquire
Friedman Doherty, LLC
125 North Route 73
West Berlin, New Jersey 08091

*Attorneys for Plaintiff*

Marguerite Mary Schaffer, Esquire
Shain, Schaffer & Rafanello, PC
Plaza 202
150 Morristown Road
Bernardsville, New Jersey 07924

*Attorney for Defendants*,
    Chase Manhattan Mortgage Corp.,
    Chase Home Finance, LLC, and
    Mortgage Electronic Registration Systems, Inc.

Lance J. Kalik, Esquire
Riker Danzig Scherer Hyland & Perretti, LLP
PO Box 1981
Morristown, New Jersey 07962-1981

*Attorney for Defendants*,
    Hubschman & Roman, PC and John J. Roman, Jr., Esquire

**HILLMAN**, District Judge

    This matter has come before the Court on Plaintiff's motion

to remand and Defendants' motions to dismiss Plaintiff's
Complaint pursuant to Federal Civil Procedure Rule 12(b)(1), or,
in the alternative, Rule 12(b)(6).  For the reasons expressed
below, Defendants' motions will be granted in part and denied in
part, and Plaintiff's motion will be denied.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Wendy Barrows, fell behind on her mortgage in
late 2004, which ultimately resulted in Defendant Mortgage
Electronic Registration Systems, Inc. ("MERS") filing a
foreclosure action against her on March 29, 2005 in the Superior
Court of New Jersey, Chancery Division, Burlington County.  On
June 28, 2005, Plaintiff then filed "a class action companion
suit" in the same court.  Defendant Chase Manhattan Mortgage
Corporation removed Plaintiff's class action complaint to this
Court on August 3, 2005.  The foreclosure action remained pending
in the New Jersey Superior Court until August 24, 2006, when the
foreclosure complaint was dismissed after Plaintiff sold her home
and satisfied her mortgage.

Plaintiff's class action complaint seeks to certify three
classes of plaintiffs for claims arising out of improper
collection practices of Defendants MERS, Chase Manhattan Mortgage
Corp., Chase Home Finance, LLC (collectively referred to as
"Chase"), Hubschman & Roman, PC, and John J. Roman, Jr., Esquire

(collectively referred to as "Hubschman").[1]  Specifically,
Plaintiff claims that when Defendants instituted foreclosure
proceedings against her and other similarly-situated individuals,
they imposed charges for legal fees and costs in excess of what
is permitted by law.  Against the MERS and Chase Defendants,
Plaintiff has asserted claims for "Accounting and Refund" (Count
I), consumer fraud pursuant to New Jersey Statute Ann. 56:8-1 et
seq. ("Consumer Fraud Act") (Count II), violation of the Truth-
in-Consumer Contract, Notice and Warranty Act, New Jersey Statute
Ann. 56:12-14 et seq. (Count III), breach of implied covenant of
good faith and fair dealing under New Jersey state law (Count
IV), and breach of implied statutory cause of action under the
Fair Foreclosure Act, New Jersey Statute Ann. 2A:50-53 (Count V).
Against the Hubschman Defendants, Plaintiff has asserted claims
for fraud under New Jersey state law (Count VI), negligent
misrepresentation under state law (Count VII), accounting and
refund (Count VIII), consumer fraud under the Consumer Fraud Act
(Count IX), violation of the Truth-in-Consumer Contract, Notice
and Warranty Act (Count X), tortious interference with contract
(Count XI), breach of implied statutory cause of action under the
Fair Foreclosure Act (Count XII), and violation of the Fair Debt
Collection Practices Act (FDCPA), 15 U.S.C. § 1962, et seq.

---

[1]Defendant American Residential Mortgage was terminated from
the case on June 27, 2006.

(Count XIII).  Against all Defendants, Plaintiff has asserted claims for civil offenses involving organized crime and organized crime activities (Racketeering) pursuant to New Jersey Statute Ann. 2C:41 (Count XIV).  Plaintiff has also requested injunctive relief (Count XV).  Removal was pursuant to 28 U.S.C. § 1331 based on Plaintiff's federal FDCPA claim against the Hubschman Defendants.

Pending before the Court are Plaintiff's motion to remand pursuant to 28 U.S.C. § 1441(c), the Chase, MERS and Hubschman Defendants' motions to dismiss pursuant to Federal Civil Procedure Rule 12(b)(1), and the MERS and Hubschman Defendants' alternative relief pursuant to Rule 12(b)(6).[2]

## II.  DEFENDANTS' MOTIONS TO DISMISS

The Defendants' motions to dismiss pursuant to Federal Civil Procedure Rule 12(b)(1) must be addressed first because Defendants are contending that Plaintiff lacks standing to assert her claims, and disputes over constitutional standing for purposes of Article III, Section 2 of the United States

---

[2]Even though Plaintiff has asserted both overlapping and different claims against the various Defendants, the basis for their motions to dismiss pursuant to Rule 12(b)(1) is the same. The Hubschman Defendants and MERS have moved, in the alternative, for dismissal of Plaintiff's claims against them pursuant to Rule 12(b)(6).  Chase has not moved for the alternative relief.
    Defendants also filed motions to dismiss based on alternative relief under the doctrines of ripeness and abstention due to the concurrently pending foreclosure action in state court.  Because the foreclosure action has been resolved, those arguments are moot.

Constitution must be addressed before proceeding to the merits of a plaintiff's claims.  <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 93-102 (1998).

Defendants contend that Plaintiff lacks standing to pursue her claims because she has not suffered an "injury in fact" as required by the "case and controversy" requirement of Article III.  Defendants argue that because Plaintiff never paid the attorneys' fees and costs that she claims are in excess of what is permitted by law, she has not suffered an injury in fact.  Without any injury, Defendants argue that all of Plaintiff's claims must be dismissed.

In order to establish an injury in fact, a plaintiff must have suffered an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (citations omitted).  Additionally, there must be a causal connection between the injury and the conduct complained of; that is, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  <u>Id.</u> (citations omitted).  It must also be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.  <u>Id.</u> at 561. (citations omitted).

5

These general principles of standing are applicable to all of Plaintiff's claims, but her statutory claims may contain particular standing requirements.  For each claim asserted by Plaintiff, it must be determined whether she has standing to assert the claim, and then, if so, whether the claim survives the Defendants' Rule 12(b)(6) motions to dismiss.  Each claim will be addressed in turn, starting with Plaintiff's FDCPA claim against the Hubschman Defendants because that claim is the basis for jurisdiction in this Court and the viability of that claim directly relates to the remand issue.

**A.    FDCPA (Count XIII against Hubschman Defendants)**

In relevant part, the FDCPA provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  It is a violation of the Act to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  Id.  If a debt collector fails to comply with this provision, a plaintiff may receive actual damages or "such additional damages as the court may allow, but not exceeding $1,000."[3]  Id. § 1692k(a)(2)(A).

---

[3]The FDCPA damages provision also provides for particular damages in the case of a class of plaintiffs.  15 U.S.C. § 1692k(a)(2)(B).  It also permits a court to award reasonable attorneys' fees and the costs of the action.  Id. § 1692k(a)(3).

Plaintiff alleges in her Complaint that the Hubschman Defendants violated the FDCPA because Defendants, as debt collectors, demanded collection of sums in excess of what is permitted by law when it sent Plaintiff a letter containing a "breakdown of the monies required in order to reinstate" her loan, including a charge for "Legal Fees and Costs due lender" in the amount of $2,500.  (Pl.'s Ex. 6, Def.'s Ex. A.)  Defendants argue that Plaintiff's claim under the FDCPA must be dismissed because she lacks standing because she never paid any fees.  In the alternative, Defendants argue that Plaintiff's claim should be dismissed for her failure to state a claim because they are not debt collectors and their request was lawful.

Despite the fact that Plaintiff never paid the attorneys' fees and costs requested by Defendants, Plaintiff has suffered an injury in fact for the purposes of standing.  The FDCPA prohibits "unfair or unconscionable means to collect or <u>attempt</u> to collect any debt" not permitted by law.  <u>Id.</u> at § 1692f (emphasis added).  Thus, a debt collector can violate the FDCPA even if he does not actually receive the illegal debt he tried to collect.  Additionally, a plaintiff may be entitled to statutory damages for a debt collector's violation even if she has not suffered any actual damages.  <u>See</u> <u>id.</u> § 1692k(a)(2)(A).  These provisions of the FDCPA defeat Defendants' argument that Plaintiff needed to have paid the attorneys' fees and costs in order to have standing

7

to bring her FDCPA claim against them.  See Robey v. Shapiro, Marianos & Cejda, L.L.C., 434 F.3d 1208, 1212 (10th Cir. 2006) (holding that the plaintiff satisfied the "injury in fact" requirement of constitutional standing, and that the plaintiff had been injured under the terms of the FDCPA and could seek legal redress of his claim under the Act, because he claimed that the defendant law firm violated the FDCPA by attempting to collect attorneys' fees that were not permitted under state law); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir. 2003) (holding that the fact that the plaintiff did not ever pay any attorneys' fees does not necessarily suggest that he was not injured for purposes of his FDCPA claim, if he can show that the law firm attempted to collect money in violation of the FDCPA); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998) (same); Baker v. G.C. Servs. Corp., 677 F.2d 775, 777 (9th Cir. 1982) (same).

Now that it has been established that Plaintiff has standing to assert her FDCPA claim, Defendants' arguments regarding why Plaintiff's claim fails must be addressed.  Defendants make five arguments: 1) Defendants' request for attorneys' fees was expressly "authorized by agreement"; 2) Plaintiff's Complaint merely speculates that Defendants' request for attorneys' fees and costs could not have equaled the requested $2,500; 3) Plaintiff does not and cannot plead that the alleged request for attorneys' fees and costs was "not permitted by law"; 4) disputes

over attorneys' fees and costs belong in the foreclosure action;
and 5) Defendants are not debt collectors because the letter from
Defendants to Plaintiff was not a demand letter.

When considering a motion to dismiss a complaint for failure
to state a claim upon which relief can be granted pursuant to
Federal Civil Procedure Rule 12(b)(6), a court must accept all
well-pleaded allegations in the complaint as true and view them
in the light most favorable to the plaintiff.   Evancho v.
Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  A court may not
dismiss the complaint for failure to state a claim "unless it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."
Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (citations omitted).
A court, however, need not credit either "bald assertions" or
"legal conclusions" in a complaint when deciding a motion to
dismiss.   In re Burlington Coat Factory Sec. Litig., 114 F.3d
1410, 1429-30 (3d Cir. 1997).

In reviewing a Rule 12(b)(6) motion, a court must only
consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.
Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group
Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document." <u>Pension Benefit Guar. Corp.</u> <u>v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

As an initial matter, even though the Defendants' letter to Plaintiff was not attached to her Complaint, the Court will consider the letter from Defendants to Plaintiff in deciding Defendants' motion.  The motion will not be converted into a summary judgment motion, however, because Plaintiff's claims are based on the document, and there is no contention that it is not authentic.

Plaintiff claims that Defendants "are debt collectors," and demanded "collection of sums in excess of that which is legally permitted" by New Jersey law and/or Court Rules.  (Compl. §§ 114-115, 29.)  The letter demanded $2,500 due for "legal fees and costs."  The FDCPA prohibits debt collectors from collecting or attempting to collect any fees not permitted by agreement or law. <u>See</u> 15 U.S.C. § 1692f.  The FDCPA also mandates that the initial correspondence the debt collector sends to the debtor must contain a statement that the "debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." <u>See</u> <u>id.</u> § 1692e(11).  Thus, accepting as true

10

Plaintiff's contention that Defendants are debt collectors, that Defendants' letter did not contain the proper warning, and that Defendants' demand for $2,500 for fees and costs violates an agreement or New Jersey law and/or Court Rule, Plaintiff has alleged a viable claim.

The Court, however, does not need to credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. To prove Plaintiff's claim under FDCPA, Defendants must have been "debt collectors" as defined by FDCPA, and the demand for $2,500 must have violated an agreement or New Jersey law. If either of these two legal conclusions are unsupportable by the statute, then Plaintiff's FDCPA claim must fail. The Court will also address Plaintiff's other argument that the letter must contain a warning, but it is not dispositive to the viability of Plaintiff's FDCPA claim.

### 1. Whether Hubschman Defendants are "debt collectors" under FDCPA

Following Congress's removal of language in the FDCPA that expressly excluded attorneys from FDCPA liability, the United States Supreme Court clarified the lower courts' disagreement over whether attorneys could be classified as "debt collectors" and be subject to liability under the Act. In Heintz v. Jenkins, 514 U.S. 291, 294-95 (1995), the Court found that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of

litigation," for two reasons:

> First, the Act defines the "debt collector[s]" to whom
> it applies as including those who "regularly collec[t]
> or attemp[t] to collect, directly or indirectly,
> [consumer] debts owed or due or asserted to be owed or
> due another." § 1692a(6). In ordinary English, a lawyer
> who regularly tries to obtain payment of consumer debts
> through legal proceedings is a lawyer who regularly
> "attempts" to "collect" those consumer debts.
>
> . . .
>
> Second, in 1977, Congress enacted an earlier version of
> this statute, which contained an express exemption for
> lawyers. That exemption said that the term "debt
> collector" did not include "any attorney-at-law
> collecting a debt as an attorney on behalf of and in
> the name of a client." Pub.L. 95-109, § 803(6)(F), 91
> Stat. 874, 875. In 1986, however, Congress repealed
> this exemption in its entirety, Pub.L. 99-361, 100
> Stat. 768, without creating a narrower, litigation-
> related, exemption to fill the void. Without more,
> then, one would think that Congress intended that
> lawyers be subject to the Act whenever they meet the
> general "debt collector" definition.

Here, Plaintiff has alleged that the Hubschman Defendants
are debt collectors, but Defendants have not asserted that they
are not.  Defendants merely state that Plaintiff's
characterization of them as "debt collectors" is a conclusory
allegation.  Defendants also analogize themselves to an Eastern
District of Michigan case which held that a law firm was not a
"debt collector" under the FDCPA because a letter they sent to a
debtor containing a reinstatement figure was not for the purposes
of collecting a debt, but rather to accommodate the debtor by
providing information he requested regarding the reinstatement of
the mortgage to avoid foreclosure.  See Williams v. Trott, 822 F.

Supp. 1266 (E.D. Mich. 1993).

Even though <u>Williams</u> is a somewhat factually similar case, Defendants' use of the <u>Williams</u> case to explain that they are not debt collectors is misplaced because it was decided prior to <u>Heintz</u> and the court did not have the benefit of applying Supreme Court reasoning to the situation before it.[4]  As it was simply stated in <u>Heintz</u>, Defendants are debt collectors if they are lawyers who regularly try to obtain payment of consumer debts through legal proceedings.  Defendants have not shown that they are not lawyers who regularly try to obtain payment of consumer debts through legal proceedings.  Thus, the Court cannot conclude that Defendants are not "debt collectors."  Consequently, for the purposes of deciding Defendants' motion to dismiss, and construing Plaintiff's allegations as true, Defendants are "debt collectors" under FDCPA.

**2.    Whether Defendants' demand for $2,500 for legal fees and costs violated an agreement or New Jersey law**

The basis for Plaintiff's entire case against the Hubschman Defendants is that their demand for "Legal fees and Costs due lender" in the amount of $2,500 violates New Jersey law and New Jersey court rules.  Specifically in regard to her FDCPA claim, Plaintiff claims that the figure violates 15 U.S.C. § 1692f(1),

---

[4]Curiously, neither party cites to or discusses <u>Heintz</u> in their submissions.

which prohibits the collection "of any amount(including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Defendants first argue that the amount is permitted by the mortgage contract.  Plaintiff concedes that her note and mortgage provide for the payment of counsel fees.  Defendants also argue that the requested sum of $2,500 represented both attorneys' fees and costs, and Plaintiff merely speculates that the request for attorneys' fees and costs could not have equaled $2,500. Defendants further argue that Plaintiff's reliance on New Jersey's Fair Foreclosure Act and New Jersey Rules of Court for the contention that the figure is not "permitted by law" is flawed.  Finally, Defendants contend that the court handling the foreclosure is the arbiter of any award of attorneys' fees and costs, and that a mere request for fees and costs as part of a reinstatement quote that allegedly exceeds an amount allowed under state law does not establish a FDCPA claim.

To resolve this issue, the "law" that Plaintiff claims Defendants violated must be established.  Plaintiff first cites a New Jersey Court Rule.  If a foreclosure action is pending, attorneys' fees are calculated pursuant to a percentage formula

promulgated by Rule 4:42-9(4).[5]  This rule is mandatory, and any provisions for the award of fees in the note or mortgage are not controlling.  <u>Coastal State Bank v. Colonial Wood Products, Inc.</u>, 411 A.2d 1172, 1174 (N.J. Super. Ct. App. Div. 1980) (citing <u>Alcoa Edgewater No. 1 Federal Credit Union v. Carroll</u>, 210 A.2d 68 (N.J. 1965)); <u>Bank of Commerce v. Markakos</u>, 126 A.2d 346 (N.J. 1956))("[E]ven if a plaintiff in a foreclosure action seeks to recover a fee on a provision in a note from the outset of the litigation, he is limited to the fee allowable under R. 4:42-9(4)."); <u>Bank of Commerce v. Markakos</u>, 122 A.2d 13, 15 (N.J. Ch. Ct. 1956), <u>aff'd</u>, 124 A.2d 605 (App. Div. 1956) (holding that attorneys' fees "in foreclosure proceedings have been regulated by rule of court for the past 50 years" and "the language of the rule is absolute").

---

[5]4:42-9. Counsel Fees
(a) Actions in Which Fee Is Allowable. No fee for legal services shall be allowed in the taxed costs or otherwise, except

. . .

(4) In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3.5%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1.5%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule.

New Jersey Rules of Court also govern the award of costs. Rule 4:42-10[6] permits the court or the clerk, as a matter of discretion, to tax as part of the taxable costs all legal fees and reasonable charges necessarily paid or incurred in procuring

---

[6]4:42-10. Search Fees

(a) Fees Allowable. In an action for the foreclosure of a mortgage or tax certificate or for partition and sale of realty, the court or the clerk may, as a matter of discretion, tax as part of the taxable costs all legal fees and reasonable charges necessarily paid or incurred in procuring searches relative to the title of the subject premises, provided that the minimum fee shall be $75 and the maximum fee shall be $500. If, however, 1% of the amount found due plaintiff is more than $75 and less than $500, such 1% shall be the maximum fee. In tax foreclosure actions brought to foreclose tax sale certificates on more than one parcel, the fees herein prescribed shall apply to each separate parcel, except, however, that in in rem tax foreclosure actions pursuant to R. 4:64-7, the fee shall be $75 for each separate parcel, and the maximum fee herein prescribed shall not apply. The court or the clerk may also authorize inclusion of all legal fees and charges necessarily incurred for searches required for unpaid taxes or municipal liens and for searches required to enable the officer making public sale to insert in the notices, advertisements and conditions of sale, a description of the estate or interest to be sold and the defects in title and liens or encumbrances thereon, as authorized by law.

(b) Affidavit of Fees; Limitations. Fees for searches shall not be taxed, unless prior to the taxing thereof the plaintiff or plaintiff's attorney has filed an affidavit setting forth an itemized statement of the fees and charges for which taxation is asked, and including only such fees and charges as were actually and necessarily paid or incurred for the purpose of the action. Without court order no search fees shall be certified or taxed for searches respecting the state of the title or encumbrances thereon prior to the commencement of the co-tenancy in partition actions, or prior to the date of the mortgage in foreclosure actions. In tax foreclosures where the plaintiff is other than a municipality a notice similar to that required by R. 4:42-9(a)(5) shall be sent where search fees are to be applied for.

searches relative to the title of the subject premises, provided that the minimum fee shall be $75 and the maximum fee shall be $500.  If, however, 1% of the amount found due plaintiff is more than $75 and less than $500, such 1% shall be the maximum fee.

Plaintiff also cites to New Jersey's Fair Foreclosure Act (FFA), New Jersey Stat. Ann. 2A:50-53, et seq., as the law that Defendants violated.  The Act provides, in relevant part, that if the lender institutes a foreclosure suit, "a debtor shall still have the right to cure the default . . ., but that the debtor shall be responsible for the lender's court costs and attorneys' fees in an amount not to exceed that amount permitted pursuant to the Rules Governing the Courts of the State of New Jersey."  N.J. Stat. Ann. 2A:50-56(c)(6),(7).  Thus, the FFA incorporates the court rules governing the calculation of attorneys' fees and the imposition of costs.

In order to prove her claim that Defendants violated the FDCPA by attempting to collect attorneys' fees and costs not permitted by law, Plaintiff must show that the $2,500 figure does not comply with Rules 4:42-9(4) and 4:42-10.  Other than stating that Plaintiff's claim "merely speculates" that their request for fees and costs could not have been $2,500 if the formulas provided by court rule were properly applied, Defendants have not shown beyond doubt that Plaintiff can prove no set of facts in

support of her claim that the $2,500 figure is excessive.[7]
Consequently, construing the allegations in Plaintiff's Complaint
as true, Plaintiff has stated a claim that the Hubschman
Defendants attempted to collect attorneys' fees and costs not
permitted by law in violation of the FDCPA.

### 3.  Whether Defendants' letter to Plaintiff should have contained a warning as defined by FDCPA

Plaintiff alleges that Defendants' letter failed to include
the "mini-Miranda warning" as required by FDCPA.  Defendants
counter that they did not need to include a warning because,
based on the <u>Williams</u> case, they were not debt collectors issuing
a demand letter.  Defendants also argue that the foreclosure
complaint--Defendants' "initial communication" with Plaintiff--
contained the proper warning.

The relevant FDCPA section provides:

A debt collector may not use any false, deceptive, or
misleading representation or means in connection with
the collection of any debt. Without limiting the
general application of the foregoing, the following
conduct is a violation of this section:
. . .

(11) The failure to disclose in the initial written
communication with the consumer and, in addition, if
the initial communication with the consumer is oral, in
that initial oral communication, that the debt
collector is attempting to collect a debt and that any
information obtained will be used for that purpose, and

---

[7]In her Opposition, Plaintiff provides her own calculations
of the maximum attorneys' fees and costs that Defendants could
have demanded.  The Court will not consider Plaintiff's
calculations because Defendants' motion to dismiss is not being
converted into a summary judgment motion.

> the failure to disclose in subsequent communications
> that the communication is from a debt collector, except
> that this paragraph shall not apply to a formal
> pleading made in connection with a legal action.

15 U.S.C. § 1692e.[8]

Based on the plain language of the statute, an initial communication from the debt collector, whether oral or in writing, must contain the prescribed warning.  Subsequent communications need not include the warning, but must, at a minimum, identify the sender as a debt collector.  However, the last phrase of the statute makes clear that neither of these two notices are required if the communication is a formal pleading.  This would appear to make common sense in that the filing of a formal pleading should leave no doubt as to the intentions of the debt collector and the purpose behind their communications.

The statute is not clear, however, as to what rule should apply in the circumstances now before the Court; that is, what notice is required in written communications from an alleged debt collector after the filing of a formal action.  On the one hand, the statute could be read to require the two warnings where a

_____

[8]Congress amended this portion of the FDCPA in 1996, and eliminated language which required that the warning be included in every communication between a debt collector and a consumer. See Goldman v. Cohen, 445 F.3d 152, 156 (2d Cir. 2006); cf. Dutton v. Wolpoff and Abramson, 5 F.3d 649, 656 (3d Cir. 1993) (interpreting prior language of statute and holding that the statute "can be read to require" the warning in every communication with a debtor).

debt collector seeks to collect a debt prior to the filing of a
lawsuit and to otherwise be silent on the issue of post-
litigation communications.  Under this interpretation, Defendants
did not violate the statute by failing to identify themselves as
debt collectors because the March 21, 2005 letter came after the
filing of the foreclosure action, it clearly related to that
lawsuit, and if Congress had intended the warning regime to apply
to litigation-related correspondence, it could have chosen to do
so in clear language.  On the other hand, the statute could be
read to require the two warnings in any post-litigation
communications so long as the communications were not exempt
"formal pleadings."

     The Court holds that the former rather than the latter is a
more rational interpretation of the statute.  First, it is clear
that even under the latter interpretation Defendants did not
violate § 1692e(11) when they did not include a "mini-Miranda" in
their March 2005 letter to Plaintiff.  Whether or not it was a
formal pleading, the foreclosure action contained the required
warning and subsequent communications needed only to identify the
sender as a debt collector.  While the March 2005 letter does not
include that notice, the Court concludes that, under the
circumstances of this case, the notice was not required.
Defendants are the same law firm and attorney that filed the
foreclosure action against Plaintiff.  The letter Defendants sent

to Plaintiff was on the law firm letterhead and was sent in
connection with the foreclosure action.  It is clear to the Court
that Congress enacted § 1692e(11) to protect unsuspecting
consumers from debt collectors who do not fully disclose their
purpose, methods, and goals.  In circumstances such as these,
there is little danger that a consumer would be misled by
Defendants' statements or confused as to their intentions.  The
Court holds that where a law firm clearly represents a mortgagee
in a foreclosure action against a mortgagor, and has previously
issued the required "mini-Miranda" warnings in writing, its
subsequent communications with the debtor need not identify the
law firm as a debt collector so long as the communication clearly
and directly relates to the pending litigation.  Consequently,
Plaintiff's claim under this section of the FDCPA must be
dismissed.

**B.   New Jersey's Consumer Fraud Act (Counts II and IX
      against all Defendants)**

Plaintiff claims that MERS, Chase, and Hubschman[9] violated
New Jersey's Consumer Fraud Act ("CFA"), New Jersey Statute Ann.
56:8-1 et seq., by "having been compelled to pay[] in excess of

---

[9]Plaintiff informed the Court that she stipulates to the
dismissal of her CFA claim against the Hubschman Defendants
because the Act is inapplicable to attorneys acting in their
professional capacities.  The Hubschman Defendants did not oppose
Plaintiff's offer, but no stipulation has been filed.  To the
extent that Plaintiff's CFA claim against the Hubschman
Defendants remains pending, the analysis of Plaintiff's CFA claim
against the other Defendants applies to Hubschman as well.

[her] legal obligation to retain [her] property and avoid
Sheriff's Sale, and/or had to retain counsel to challenge clearly
inaccurate and otherwise illegal impositions and charges, and/or
incur additional[] late fees and charges while the improper fees
and charges are challenged."[10]   (Compl. ¶ 63; see Compl. ¶ 93.)
Defendants argue that Plaintiff's CFA claim must fail because she
lacks standing.   In the alternative, Defendants argue that
Plaintiff's claim must be dismissed pursuant to Rule 12(b)(6).

The CFA contains its own standing requirement.   The CFA
provides, "Any person who suffers any ascertainable loss of
moneys or property, real or personal, as a result of the use or
employment by another person of any method, act, or practice
declared unlawful under this act . . . may bring an action . . .
in any court of competent jurisdiction."   N.J. Stat. Ann. 56:8-
19.   Thus, the only prerequisite for maintenance of a private

---

[10]Plaintiff's claim that she suffered damages for having to
hire counsel to contest the improper attorneys' fees and costs
conflicts with the "American Rule," which is followed by both
federal and New Jersey courts.   The rule provides that a party
may not recover the attorney's fees expended to establish the
adversary's liability.   In re Estate of Lash, 776 A.2d 765, 771
(2001); see also Alyeska Pipeline Service Co. v. Wilderness
Society, 421 U.S. 240, 247 (1975) (holding that under the
"American Rule," all parties to litigation are responsible for
bearing the cost of their own attorneys, and any deviation from
this general concept must be based on specific statutory
authorization or some other longstanding exception to the rule).
At the conclusion of this litigation, if Plaintiff is successful
on any of her claims, she may be awarded attorneys' fees and
costs as part of her damages, but her expenditure of hiring an
attorney to prosecute her case cannot constitute "an injury" for
any of her claims for which she seeks relief.

action to remedy a violation of the Consumer Fraud Act is that a plaintiff must present a claim of ascertainable loss.  Laufer v. U.S. Life Ins. Co. in City of New York, 896 A.2d 1101, 1110 (N.J. Super. Ct. App. Div. 2006) (citing Weinberg v. Sprint Corp., 801 A.2d 281 (2002)) (stating that the requirement of an "ascertainable loss" is purely a standing requirement).

The CFA does not define what constitutes an "ascertainable loss," and there is no legislative history "that sheds direct light on those words."  See Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783,792 (N.J. 2005) (citation omitted).  The New Jersey Supreme Court has instructed, "To give effect to the legislative language describing the requisite loss for private standing under the CFA, . . . a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss."  Id.  "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable," and in order to raise a genuine dispute, "the plaintiff must proffer evidence of loss that is not hypothetical or illusory."  Id.

Here, Plaintiff's foreclosure action was resolved without the court awarding Defendants any of their requested attorneys' fees or costs.  When Plaintiff filed her Complaint, her claim was hypothetical, as there was a possibility she would have to pay attorneys' fees and costs in order to resolve the foreclosure

23

action.  Now, however, that the foreclosure action has been
resolved without her having to pay any attorneys' fees and costs,
her claim went from hypothetical to nonexistent.  Therefore,
Plaintiff was not "compelled to pay in excess of [her] legal
obligation" as pled in her Complaint, and because Plaintiff did
not pay any attorneys' fees or costs, she has not sustained any
ascertainable loss.  As a result, Plaintiff's claims under the
CFA against all Defendants must be dismissed for lack of
standing.

### C.   Truth-in-Consumer Contract, Notice and Warranty Act ("NJTCCA") (Counts III and X against all Defendants)

The Truth-In-Consumer Contract, Warranty and Notice Act
("NJTCCA"), New Jersey Statute Ann. 56:12-14 to -18, protects
consumers by requiring that consumer contracts be clearly written
and understandable.  Alloway v. General Marine Industries, L.P.,
695 A.2d 264, 274 (N.J. 1997).  The NJTCCA provides, in relevant
part:

> No seller, lessor, creditor, lender or bailee shall in
> the course of his business offer to any consumer or
> prospective consumer or enter into any written consumer
> contract or give or display any written consumer
> warranty, notice or sign after the effective date of
> this act which includes any provision that violates any
> clearly established legal right of a consumer or
> responsibility of a seller, lessor, creditor, lender or
> bailee as established by State or Federal law at the
> time the offer is made or the consumer contract is
> signed or the warranty, notice or sign is given or
> displayed. Consumer means any individual who buys,
> leases, borrows, or bails any money, property or
> service which is primarily for personal, family or

household purposes. . . .

N.J. Stat. Ann. 56:12-15.  "Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs."  Id. at 56:12-17.

Plaintiff claims that the correspondence between Plaintiff and Defendants constituted "written consumer contracts" or "written consumer notices" under the NJTCCA, and in those contracts/notices, Defendants "demanded collection of sums in excess of that which is permitted under Court Rules."  (Compl. ¶¶ 65-67; 95-97.)  Defendants again contend that Plaintiff lacks standing, or in the alternative, fails to state a claim.

Similar to Plaintiff's FDCPA claim, the NJTCCA can be violated if a contract or notice simply contains a provision prohibited by state or federal law, and it provides a remedy even if a plaintiff has not suffered any actual damages.  Thus, Defendants' argument that Plaintiff lacks standing because she never paid attorneys' fees and costs is inapplicable to her NJTCCA claim.  Plaintiff's NJTCCA claims, however, must still withstand Defendants' motion to dismiss.

Plaintiff's Complaint does not contend that her note or mortgage contained provisions that violate state or federal law.

25

Rather, she alleges that "correspondence" between Defendants and herself contained a provision that is prohibited by law, and that correspondence constitutes a written contract or notice under the NJTCCA.  As to MERS and Chase, even if they are a "seller, lessor, creditor, lender or bailee," Plaintiff has not alleged that any "contract" or "notice" from MERS or Chase to her contained "any provision that violates any clearly established legal right" of Plaintiff.  The only "contract" or "notice" that Plaintiff claims contains an unlawful provision is the letter from the Hubschman Defendants.  As a result, the NJTCCA cannot provide Plaintiff with any relief for her claims against MERS and Chase.[11]

With regard to the Hubschman Defendants, even if their letter to Plaintiff constituted a "written contract" or "written notice,"[12] the Hubschman Defendants are not a "seller, lessor,

---

[11]Even though Chase has not moved for dismissal of Plaintiff's claims pursuant to Rule 12(b)(6), a "district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action."  Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980) (holding that it is not error for a district court to dismiss a claim sua sponte, but "because judgment on the pleadings results in an early assessment of the merits of plaintiff's action, the plaintiff must be given the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn").  Here, nowhere in Plaintiff's Complaint does she allege that any document between Chase and Plaintiff contained a provision in violation of law.

[12]The letter would not qualify as a "consumer contract" as it is defined by the statute.  See N.J. Stat. Ann. 56:12-1.  The

creditor, lender or bailee."  Even though these terms are not defined in the statute, consistent with traditional canons of statutory construction, analysis of a statute begins with the plain language.  <u>Miah v. Ahmed</u>, 846 A.2d 1244, 1249 (N.J. 2004). In the absence of contrary legislative intent, such language should be given its ordinary meaning.  <u>Id.</u> (citation omitted). When the meaning of the statutory language is clear and unambiguous, the statute must be enforced as written.  <u>Id.</u> (citation omitted).

There is no allegation that the law firm or its attorneys acted as a seller, lessor, lender or bailee.  Plaintiff argues in its Opposition that the Hubschman Defendants are "creditors" because they demanded in a separate line item that she pay their counsel fees and costs.  These fees and costs were to be paid to Chase.  She also argues that they are creditors because they demanded payment of a lis pendens discharge fee directly to them. Plaintiff's arguments strain the plain meaning of "creditor" and do not effectuate the purpose of the NJTCCA.[13]

*Black's Law Dictionary* defines "creditor" as "one to whom a

---

statute does not define "written notice," and no case law addresses the issue.

[13]There is no legislative history available for the NJTCCA, but one New Jersey court stated that it is "known as the 'lemon law' pertaining to the purchase of an automobile or motorcycle." <u>D'Ercole Sales, Inc. v. Fruehauf Corp</u>., 501 A.2d 990, 997 (N.J. Super. Ct. App. Div. 1985).

debt is owed; one who gives credit for money or goods."  The Hubschman Defendants did not provide legal services to Plaintiff for which she owed a debt directly to them.  Rather, pursuant to the Fair Foreclosure Act, court rule, and contract, Chase was entitled to reimbursement of its legal fees, as performed by the Hubschman Defendants, from Plaintiff.[14]  Under this argument, the Hubschman Defendants would be considered the creditor of Chase.  Plaintiff's argument is untenable.

Furthermore, Plaintiff is not a consumer as she relates to the Hubschman Defendants.  "Consumer" is defined by the NJTCCA as "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes."  N.J. Stat. Ann. 56:12-15.  Plaintiff did not buy, lease, borrow or bail any service from the Hubschman Defendants.  To the contrary, the Hubschman Defendants were adverse to Plaintiff.  Consequently, because the Hubschman Defendants are not a "creditor" under the Act, and Plaintiff is not a "consumer" under the Act, Plaintiff's NJTCCA claim must be dismissed for failure to state a claim.

---

[14]The right to a fee in a foreclosure action "emanates from the fact that mortgage loans, as a matter of course, place specific contractual obligations on the mortgagor to bear the fees incurred by the mortgagee upon the need to foreclose or collect."  Stewart Title Guaranty Company v. Lewis, 788 A.2d 941, 945 n.8 (Super. Ct. Ch. Div. 2001).

**D.    Fair Foreclosure Act ("FFA") (Counts V and XII against all Defendants)**

Plaintiff has also asserted a claim against MERS, Chase and the Hubschman Defendants for a breach of an implied statutory cause of action under the Fair Foreclosure Act ("FFA"), New Jersey Statute Ann. 2A:50-53 et seq.  Plaintiff claims that she "has been damaged by violations of the Fair Foreclosure Act by having to pay excessive counsel fee payments and/or costs associated with the foreclosure and/or by incurring additional late fees and/or late charges during the course of disputing excessive fees and/or costs."  (Compl. ¶¶ 78; 110.)  Defendants move to dismiss this claim for Plaintiff's lack of standing, or in the alternative, Plaintiff's failure to state a claim under the Act.

In order to defeat Defendants' argument that Plaintiff lacks standing, Plaintiff must show that she suffered an injury for which the FFA can provide a remedy.  The parties dispute whether an implied cause of action exists under the FFA.  Prior to determining that issue, however, Plaintiff must have alleged a concrete and particularized injury.  Plaintiff claims that Defendants' violation of the FFA caused her to be damaged by having to pay excessive attorneys' fees and costs in Defendants' foreclosure action against her.  The foreclosure action has been resolved, and Plaintiff did not have to pay any attorneys' fees

and costs.  Thus, even if the FFA did provide an implied cause of action, Plaintiff has not sustained any injury that could be remedied by the FFA.  As a result, Plaintiff's FFA claim fails.

### E.   RICO (Counts XIV against all Defendants)

Plaintiff has asserted claims against MERS, Chase and the Hubschman Defendants for civil offences involving organized crime and organized crime activities (racketeering) pursuant to New Jersey Statute Ann. 2C:41-1 et seq. ("NJRICO").  Again, Defendants have moved to dismiss these claims for lack of jurisdiction or, in the alternative, failure to state a claim.

New Jersey's RICO statute allows civil remedies to address prohibited activities.  See N.J. Stat. Ann. 2C:41-4.  NJRICO prohibits four categories of activities:

> a.  It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which he has participated as a principal within the meaning of N.J.S. 2C:2-6 to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce. . . .
>
> b.  It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in or activities of which affect trade or commerce.
>
> c. It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of

the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

d. It shall be unlawful for any person to conspire as defined by N.J.S. 2C:5-2, to violate any of the provisions of this section.

N.J. Stat. Ann. 2C:41-2.

NJRICO specifically defines what constitutes "unlawful debt," "a pattern of racketeering activity," and "racketeering activities." "Unlawful debt" means "debt (1) Which was incurred or contracted in gambling activity which was in violation of the law of the United States, a state or political subdivision thereof; or (2) Which is unenforceable under state or federal law in whole or in part as to principal or interest because of the laws relating to usury." N.J. Stat. Ann. 2C:41-1(e). A pattern of racketeering activity requires "(1) Engaging in at least two incidents of racketeering . . . and (2) A showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents." Id. at 2C:41-1(d).

"Racketeering activities" means numerous crimes, including fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes. Id. at 2C:41-1(o). Plaintiff alleges that Defendants violated 2C:21-7(h) (deceptive business practice of making "a false or misleading written

31

statement for the purpose of obtaining property or credit"),
2C:21-4(b)(1)("Issuing a false financial statement. A person is
guilty of issuing a false financial statement, a crime of the
third degree, when, with purpose to deceive or injure anyone or
to conceal any wrongdoing; he by oath or affirmation:(1)
Knowingly makes or utters a written instrument which purports to
describe the financial condition or ability to pay of some person
and which is inaccurate in some substantial respect . . . ."),
2C:21-19(a)(2) ("Criminal usury. A person is guilty of criminal
usury when not being authorized or permitted by law to do so, he:
. . .(2) Takes, agrees to take, or receives any money or other
property as interest on the loan or on the forbearance of any
money or other interest in excess of the maximum rate permitted
by law.").  Plaintiff also alleges RICO violations under 18
U.S.C. § 1341 ("Frauds and swindles" through the mail), 18 U.S.C.
§ 1343 ("Fraud by wire, radio, or television"), and 18 U.S.C. §
1951 ("Interference with commerce by threats or violence").

     Plaintiff's RICO claims fail for numerous reasons.  First,
Plaintiff has alleged no set of facts that Defendants engaged in
any sort of collection of an unlawful debt as defined by NJRICO.
Second, the racketeering activities that Plaintiff contends
Defendants conducted--deceptive business practices, issuing false
financial statements, criminal usury, fraud through the mail and
wire, and interference with commerce by threats and violence--are

32

similarly unsupported by any alleged facts.  Further, to the
extent that any of these claims require that Plaintiff show she
actually paid the alleged excessive fees, they fail for lack of a
redressable injury.  Consequently, Plaintiff's claims based on
NJRICO must be dismissed.[15]

### F.   Breach of implied covenant of good faith and fair dealing under New Jersey law (Count IV against MERS and Chase)

Plaintiff has alleged that Defendants MERS and Chase
breached the implied covenant of good faith and fair dealing
because they "had a duty to insure that all sums collected as
they pertain to the contract were legally due," and they "failed
to insure the proper sums were collected and/or attempted to be
collected."  (Compl. ¶¶ 72-73.)  MERS and Chase have moved for
dismissal of this claim for Plaintiff's lack of standing, and
MERS has moved for the alternative relief to dismiss for failure
to state a claim.

New Jersey courts have long recognized that there is an
implied covenant of good faith and fair dealing in every
contract.  Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575,
587 (N.J. 1997).  Such duty is grounded on the fundamental
principle that in every contract there is an implied covenant

---

[15]Instead of dismissal, Plaintiff seeks leave to amend her
Complaint to cure any deficiencies.  Because the dismissal of her
claims is without prejudice, there may be avenues available for
Plaintiff under the Federal Rules of Civil Procedure to
effectuate her request.

that neither party shall commit any act which shall destroy or injure the rights of the other party to enjoy the fruits of the contract.  Id.   This implied duty of fair dealing does not alter the terms of a written agreement, however.  Rudbart v. N. Jersey Dist. Water Supply Comm'n, 605 A.2d 681, 692 (N.J. 1992).

New Jersey case law has recognized the potential for such an independent cause of action based upon the covenant of good faith and fair dealing in three situations: (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations; (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance.  Seidenberg v. Summit Bank, 791 A.2d 1068, 1077 (N.J. Super. Ct. App. Div. 2002).

MERS and Chase's motion to dismiss for lack of standing must be denied because Plaintiff has alleged that they had an implied duty to insure that proper attorneys fees were collected or attempted to be collected.  Plaintiff's contention that Defendants had a duty to insure the propriety of any attempt to collect attorneys fees negates Defendants' argument that Plaintiff needed to have actually paid such fees.  Therefore, to

34

the extent that such an implied duty can be read into the contract, Plaintiff has asserted an injury sufficient to confer standing.

In addition to its motion to dismiss based on Plaintiff's lack of standing, MERS argues that this claim should be dismissed against it because Plaintiff's Complaint does not contain a single factual allegation of conduct by MERS relating to Plaintiff.  Plaintiff alleges that MERS is "a mortgage services, account manager or otherwise provides mortgage related services." (Compl. ¶ c.)  She also alleges that she is a mortgager who had her loan serviced by Chase, and "the allegedly illegal counsel fees imposed upon her arose from a foreclosure initiated against her by" MERS.  (Id. ¶ 22.)  Plaintiff has not alleged any contractual relationship between MERS and herself.  In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.  See Noye v. Hoffmann-La Roche Inc., 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990).  Consequently, Plaintiff's claim against MERS must be dismissed.

Chase has not moved to dismiss this claim for any reason other than standing.  Unlike the Court's sua sponte dismissal of Plaintiff's NJTCCA claim, this claim, however, cannot be dismissed without a motion by Chase.  Taking all of Plaintiff's allegations as true and making all inferences favorable to her, Plaintiff may have asserted a viable claim against Chase for the

breach of its implied duty to insure that the proper sums were attempted to be collected.  The Court issues no opinion on whether that claim will survive a motion to dismiss by Chase, but Plaintiff must have the opportunity to defend her claim because at this time it cannot be definitively determined that Plaintiff has no viable claim against Chase under this theory.

### G.   Fraud under New Jersey law (Count VI against Hubschman Defendants)

Plaintiff alleges that the Hubschman Defendants "knowingly participated in defrauding" Plaintiff "when they charged excessive sums for attorney[s'] fee[s] when not permitted to do so by law," and that they "knew that when they demanded and/or received excessive attorney[s'] fees that these[] sums collected and/or demanded were improper."  (Compl. ¶¶ 80-81.)  Defendants have moved to dismiss Plaintiff's claim based on standing or for her failure to state a claim upon which relief can be granted.

Defendants' motion to dismiss based on standing must be granted because even though Plaintiff has alleged that Defendants defrauded her when they demanded excessive attorneys' fees, the fact that she did not actually pay any attorneys' fees defeats her alleged injury.

In order to succeed in an action for common law fraud, a plaintiff must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person

36

rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997) (citing Jewish Ctr. Of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981)). "Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." Banco Popular North America v. Gandi, 876 A.2d 253, 261 (N.J. 2005) (citations omitted).  The New Jersey Supreme Court elaborated:

> Although the word "fraud" is used in common parlance to connote any practice involving shady or underhanded dealing, in the law it is a term of art with a clear definition. We hold that an amorphous [] fraud claim that requires plaintiffs to prove neither reliance nor misrepresentation does not exist in New Jersey. We conclude, as well, that its absence will wreak no injustice on litigants in this State.

Id.  Further, "a false representation made to a person who knows it to be false is not in legal estimation a fraud." Golden v. Northwestern Mut. Life Ins. Co., 551 A.2d 1009, 1014 (N.J. Super. Ct. App. Div. 1988).

Here, Plaintiff cannot prove reliance on Defendants' alleged false misrepresentation, and she cannot prove an injury as a result of that reliance.  Plaintiff claims that Defendants knew that their attorneys' fees and costs were excessive at the time they "demanded" them.  Even though this allegation could meet the first two elements of a common law fraud claim--that Defendants made a material representation of fact that they intended

Plaintiff to rely on--Plaintiff has not alleged how she relied on this demanded sum to her detriment.  Plaintiff may contend that Defendants' demand was "shady or underhanded," but nothing in her Complaint can be construed as Plaintiff having relied on that demand since she never paid the requested fees.  Indeed, inherent in the fact that she did not pay any attorneys' fees and costs when Defendants "demanded" them is that she knew the demand was improper.  Consequently, because Plaintiff has not alleged that she relied on the alleged misrepresentation, and no set of facts in her Complaint can be construed to prove that she did rely on the misrepresentation, her common law fraud claim against the Hubschman Defendants must be dismissed.

### H.   Negligent misrepresentation under New Jersey law (Count VII against Hubschman Defendants)

Plaintiff alleges that the Hubschman Defendants were under a duty to treat Plaintiff "within the bounds of expecting" that Plaintiff would reasonably rely on the representation these Defendants made to them," and that "Defendants negligently misrepresented the proper sums collected and/or attempted to be collected."  (Compl. ¶¶ 84-85.)  Defendants have moved to dismiss Plaintiff's claim based on standing or for her failure to state a claim upon which relief can be granted.

Similar to her fraud claim, Plaintiff does not have standing to assert her negligent misrepresentation claim as alleged in her

Complaint.  Even though Plaintiff claims that Defendants
negligently misrepresented the sums they "attempted" to collect,
the fact that she did not actually pay those fees is fatal to her
standing to bring such a claim.  To establish a claim for
negligent misrepresentation, a plaintiff must show "'[a]n
incorrect statement, negligently made and justifiably relied on,
which results in economic loss.'"  Konover Const. Corp. v. East
Coast Const. Services Corp., 420 F. Supp. 2d 366, 370 (D.N.J.
2006) (quoting McClellan v. Feit, 870 A.2d 644, 648 (N.J. Super.
Ct. App. Div. 2005) (citation omitted)).  The "actual receipt and
consideration of any misstatement remains central to the case of
any plaintiff seeking to prove that he or she was deceived by the
misstatement or omission."  Kaufman v. i-Stat Corp., 754 A.2d
1188, 1195-96 (N.J. 2000).  Negligent misrepresentation is easier
to prove than fraud because it does not require scienter as an
element.  Id.

     Even though Defendants could be liable for requesting
improper fees even if they did not know they were improper, it is
Plaintiff's burden to prove reliance or economic loss.  Again,
because she did not pay the allegedly improper attorneys' fees
and costs, Plaintiff cannot show that she relied on or was
injured by Defendants' "misstatement."  As a result, without any
injury, Plaintiff does not have standing to assert this claim.

## I. Tortious interference with contract under New Jersey law (Count XI against Hubschman Defendants)

Plaintiff claims that the Hubschman Defendants intentionally and maliciously interfered with her mortgage contract with Chase and MERS in order to "secure benefits that accrued to them in the [] form [of] higher fees and payments." (Compl. ¶ 104.) Plaintiff claims that she has been injured by "having been compelled to pay[] in excess of [her] legal obligation to retain [her] property and avoid Sheriff's Sale."[16] (Id. ¶ 103.) Defendants have moved to dismiss Plaintiff's claim based on standing or for her failure to state a claim upon which relief can be granted.

Defendants' motion to dismiss for lack of standing must be granted because Plaintiff has not suffered the injury she claims. Plaintiff's claimed injury is that she was compelled to pay attorneys' fees and costs in excess of her legal obligation to retain her property and avoid Sheriff's sale. She did not pay any attorneys' fees or costs. Without any redressable injury, Plaintiff is prohibited from maintaining such a claim.[17]

---

[16]Plaintiff again improperly claims as damages the counsel fees to challenge this issue. See supra note 10.

[17]The elements of a claim for tortious interference with contractual relations are: "(1) the existence of the contract (or the prospective economic relationship); (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." See Velop, Inc. v. Kaplan, 693 A.2d 917, 926 (N.J. Super. Ct. App. Div. 1997).

**J.   Accounting and refund (Counts I and VIII against all Defendants) and Injunction (Count XV against all Defendants)**

Finally, Plaintiff requests an injunction and "accounting and refund" for all Defendants.  Plaintiff's claim for an "accounting and refund" is not an independent cause of action, but it will be construed to request injunctive relief because Plaintiff's injunction count contains the same request.

As a result of the above analysis, the only claims remaining in Plaintiff's Complaint are Count XIII against the Hubschman Defendants under the Fair Debt Collection Practices Act and Count IV against Chase for a breach of the implied covenant of good faith and fair dealing.  There are no remaining claims against MERS.  To the extent that the equitable remedy of injunctive relief is available to Plaintiff if she is successful in her claim against Chase for its breach of the implied covenant of good faith and fair dealing and/or her claim against the Hubschman Defendants for a violation of the FDCPA, Count XV will not be dismissed.

**III. PLAINTIFF'S MOTION TO REMAND**

The Chase Defendants removed this action to this Court pursuant to 28 U.S.C. § 1331 based on Plaintiff's federal FDCPA claim against the Hubschman Defendants.  Plaintiff has filed a

motion seeking remand of her case.[18]

Plaintiff has asserted four arguments to support her motion. First, Plaintiff argues that removal was improper because MERS and the Hubschman Defendants did not formally consent to removal. Second, Plaintiff contends that remand is warranted because state law claims and issues predominate the action.  Third, Plaintiff argues that the sole federal claim is ancillary to the entire case and wholly dependent upon determinations of state law. Finally, Plaintiff argues that the federal claim affects only a limited portion of the total body of claimants.

As a primary matter, the Chase Defendants' removal was proper.  Chase did not need consent from the other defendants prior to removal because they had not yet been served.  See 28 U.S.C. § 1446(b); Balazik v. County of Dauphin, 44 F.3d 209, 213 (3d Cir. 1995) (rule of unanimity may be disregarded when any non-resident defendant has not been served at the time the removing defendants filed their petition).

With regard to Plaintiff's other three arguments for remand, they are unsupportable now that only her federal claim and one state law claim remain in the action.  Moreover, because the Court has original jurisdiction over Plaintiff's FDCPA claim, remand of that claim is prohibited.  See 28 U.S.C. § 1367(c);

---

[18]The Hubschman Defendants have joined Chase's Opposition to Plaintiff's motion to remand.

Borough of West Mifflin v. Lancaster, 45 F.3d 780, 787 (3d Cir. 1995) (stating that "nothing in § 1367(c) authorizes a district court to decline to entertain a claim over which is has original jurisdiction").  The only claim available for remand it Plaintiff's state law claim against Chase for breach of implied covenant of good faith and fair dealing, and the Court will exercise its discretion to extend supplemental jurisdiction over the state law claim because it is so related to the federal claim that it forms part of the same case or controversy, see 28 U.S.C. § 1367(a), and because judicial economy would not warrant two separate proceedings in state and federal court on these interrelated claims.


IV.  CONCLUSION

     Plaintiff's claim under the Fair Debt Collection Act, 15 U.S.C. §§ 1692(f), against the Hubschman Defendants (Count XIII) survives their motion to dismiss based on lack of subject matter jurisdiction and failure to state a claim.  Plaintiff's claim under New Jersey state law for the breach of the implied covenant of good faith and fair dealing against the Chase Defendants (Count IV) survives their motion to dismiss for lack of subject matter jurisdiction.  Plaintiff's request for injunction (Count XV) remains to the extent that injunctive relief is available to Plaintiff for her two surviving claims.  All other counts are

dismissed for the reasons expressed above.  Plaintiff's motion

for remand is denied.  An appropriate Order will issue.


Dated: December 8, 2006          s/ Noel L. Hillman

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.